IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GINA SEKLECKI

      Plaintiff,

v.                                         JURY TRIAL DEMANDED

PHYSICIANS ENDOSCOPY, LLC

      Defendant.

## **CIVIL COMPLAINT**

Plaintiff Gina Seklecki files this Complaint against Defendant Physicians Endoscopy, LLC, and in support thereof avers as follows:

### **Jurisdiction and Venue**

1. The jurisdiction of this Court is based upon 28 U. S. C. §1331, in that this Court has original jurisdiction over Counts I and II, which are based upon laws of the United States of America, the Age Discrimination in Employment Act, 29 U.S.C. §621 ("ADEA'); and the Americans with Disabilities Act, 42 U.S.C. §12101, as amended by the ADA Amendments Act of 2008 ("ADA").

2. Plaintiff requests a trial by jury of the claims raised herein.

3. Venue is appropriate in this Court pursuant to 28 U. S. C. §1392(b) in that Defendant has ongoing business operations in this District and the events giving rise to the claim occurred in this District.

4. The amount in controversy exceeds $150,000.00, exclusive of interest and costs.

1

5. Plaintiff has complied with the applicable administrative remedies by timely filing a Charge with the Equal Employment Opportunity Commission ("EEOC"), Charge no. 530-2021-000333, on October 22, 2020.

6. On February 4, 2021, the EEOC issued a Notice of Right to Sue permitting Plaintiff to file her causes of action under the ADEA and ADA.

7. Upon receipt of applicable authority from the Pennsylvania Human Relations Commission, Plaintiff intends to amend this Complaint and assert causes of action for age and disability discrimination under the Pennsylvania Human Relations Act, 43 P. S. §955(a), et. seq., ("PHRA").

**Parties**

8. Plaintiff Gina Seklecki ("Seklecki") is an adult female, who resides at 2540 Candytuft Drive, Jamison, PA 18929.

9. Physicians Endoscopy, LLC, ("PE") is a Delaware corporation, that operates a principle place of business at 2500 York Road, #300, Jamison, PA 18929.

10. At all times relevant hereto, Defendant PE was acting through its agents, servants and employees, who were acting within the scope of their authority, in the course of their employment, and under the direct control of PE.

**Factual Background**

11. Plaintiff Gina Seklecki ("Seklecki") is 60 years of age.

12. Seklecki has over 30 years' experience supporting business executives at the workplace.

13. On July 8, 2019, Seklecki commenced employment with PE as a Front Desk Administrator, earning $18.00 per hour, plus employment benefits.

14. PE specializes in the development and management of free-standing endoscopy centers in partnership with practicing physicians in hospitals, and has over 60 gastroenterology ambulatory surgery centers, operated by over 600 gastroenterologists, who perform over 600,000 annual procedures.

15. As the Front Office Administrator, Seklecki was responsible for office administrative duties, relating to visitor registration, security, answering calls, mail distributions, supply fulfillment, facility requests, office supply fulfillment, equipment maintenance, and general office support to all departments as needed. Seklecki reported to Donna Forsthoffer ("Forsthoffer"), Operations & Facilities Manager.

16. On September 25, 2019, Seklecki received her initial 90-day Performance Review with an average weighted score of 2.36, which, based on PE's rating scale, is between "Meets Expectations" and "Exceeds Expectations."

17. At the end of the year 2019, Operations & Facilities Manager Forsthoffer advised Seklecki that PE was impressed and pleased with Seklecki's work and Seklecki's hourly rate was increased to $18.23 per hour.

18. Shortly after the onset of COVID-19, PE remained open and most employees worked remotely; Seklecki's work hours were initially reduced to approximately ten hours per week, during which time Seklecki performed her assigned duties and provided support to all departments, including sending paychecks, packing and shipping personal belongings to employees who were laid off, notarizing documents, and other administrative tasks.

19. Seklecki suffers from chronic asthma for which she has been under a physician's care since July 28, 2016.

20. Due to the chronic asthma, Seklecki is at increased risk for severe illness from COVID-19.

21. Operations & Facilities Manager Forsthoffer was aware that Seklecki suffered from chronic asthma.

22. Seklecki's treating physician advised Seklecki to make sure that she strictly followed all COVID-19 safety protocols.

23. As of June 2020, PE planned for employees to begin to return to work at the office, and Seklecki was assigned duties to prepare for the eventual return.

24. Seklecki advised Operations & Facilities Manager Forsthoffer that due to her asthma and underlying conditions, she was apprehensive to return to work, but that she believed that would be able to perform her duties by sitting at her desk in the reception area, which was not near other employees, and by following safe social distancing practices.

25. Forsthoffer responded to Seklecki by stating that she was "freaking out" and that she had too much "sensitivity" to COVID-19.

26. Forsthoffer began belittling and mocking Seklecki to other employees as Seklecki was wearing a face covering and remaining six feet away from others at all times.

27. Jennifer Rivera, PE Operations Coordinator, was present on certain occasions when Forsthoffer was belittling and mocking Seklecki to other employees.

28. As Seklecki continued to strictly comply with safe COVID-19 policies and guidelines, she continued to be routinely humiliated and mocked.

29. When Seklecki and Forsthoffer had one-on-one meetings, Forsthoffer made condescending comments to Seklecki who wore a face covering and sat far away during one-on-one meetings.

30. On August 25, 2020, Seklecki advised Lindsay about Forsthoffer's behavior and met with Seklecki to question her about "what was going on with Donna."

31. On August 28, 2020, Seklecki advised Dana Pietras, Human Resources Business Partner about Forsthoffer's conduct and harassment.

32. On September 14, 2020, PE involuntarily terminated the employment of Forsthoffer.

### PE's Noncompliance With Pennsylvania's Quarantine Recommendations

33. In the summer of 2020, Tina Kubit ("Kubit"), PE Operations Coordinator, traveled to South Carolina, which at the time was on the Commonwealth of Pennsylvania's recommended self-quarantine list, whereby upon returning from South Carolina, a resident was advised to self-quarantine for 14 days.

34. When Kubit returned to Pennsylvania, she did not follow the 14-day quarantine practice, and instead, immediately returned to work at PE.

35. Seklecki made it known that she did not believe that Kubit was following safety practices initiated by Pennsylvania.

36. The same week that Kubit returned to work, Angie Wustner ("Wustner"), PE Purchasing Manager, traveled to North Carolina, which at the time was on the Commonwealth of Pennsylvania's recommended self-quarantine list, whereby upon returning from North Carolina, a resident was advised to self-quarantine for 14 days.

37. When Wustner returned to Pennsylvania, she did not follow the 14-day quarantine practice, and instead, immediately returned to work.

38. Seklecki made it known that she did not believe that Wustner was following a safety practice initiated by Pennsylvania.

## The Operations Coordinator Position

39. On July 8, 2020, at a periodic 1:1 meeting, Operations & Facilities Manager Forsthoffer informed Seklecki that PE planned to create a new position, Operations Coordinator, and combine the responsibilities of the Front Office Administrator with additional administrative responsibilities.

40. Forsthoffer stated that the new position would be located in a workstation within the department, as opposed to out front in the reception area.

41. Seklecki was advised that she could apply for the position, but if she did not apply, or was not the successful candidate, she would be laid off, as her position was being eliminated.

42. Seklecki believed that the "new position" was actually a plan to eliminate Seklecki's employment by changing the job title, in retaliation for Seklecki's insistence for maintain social distancing and proper COVID-19 protocols at the workplace.

43. Jared Brookstein, Recruiting Manager, and Jennifer Rivera, Operations Coordinator, advised Seklecki that they believed that the motivation behind the job title change was targeted towards Seklecki's personal situation.

44. On August 25, 2020, Monique Lindsay, Director of Operations and Implementation, described the "new" position in more detail to Seklecki.

45. After receiving the additional information, on September 1, 2020, Seklecki formally applied for the Operations Coordinator position, and informed Director of Operations and Implementation Lindsay, and Operations & Facilities Manager Forsthoffer, about her application on September 2, 2020.

46. On September 3, 2020, Recruiting Manager Brookstein advised Seklecki that there was an entry-level position for an Office Coordinator / Payer Contracting Coordinator, and he thought that Seklecki might be interested.

47. After reviewing a description of the Office Coordinator / Payer Contracting Coordinator position, Seklecki advised Brookstein that her skill set, and capabilities were more suited for the Operations Coordinator position, which included Seklecki's current responsibilities.

48. On September 22, 2020, Director of Operations and Implementations Lindsay interviewed Seklecki for the Operations Coordinator position.

49. Prior to the interview, Seklecki had little interaction with Lindsay, who was at most in the office one day per week, on Tuesdays.

50. Prior to the interview, at Lindsay's request, Seklecki presented a "Detailed List of Responsibilities" for her position.

51. At the beginning of the interview, Lindsay stated that the Operations Coordinator position would include all Front Desk Administrator responsibilities listed on the Detailed List of Responsibilities presented by Seklecki, and some additional administrative responsibilities in support of the Operations Department.

52. At the interview Seklecki was only asked two questions; Lindsay did not have Seklecki's resume, nor did she ask any questions regarding Seklecki's skills, experience, or current responsibilities.

53. On September 22, 2020, PE interviewed two substantially younger candidates for the Operations Coordinator position:

    a. Kerry McMonagle (approximate age: mid 20's); and

    b. Shana Baker (approximate age: late 20's, early 30's).

54. On September 24, 2020, Seklecki was advised for the first time that there were actually two open Operations Coordinator positions.

56. PE hired Kerry McMonagle and Shana Baker as Operations Coordinators.

57. PE did not hire Seklecki as an Operations Coordinator.

### The Office Coordinator / Contracting Coordinator Position

58. On September 24, 2020, Seklecki was advised to meet with Becky Doyle, Payer Contracting Manager, to discuss details concerning the Office Coordinator / Contracting Coordinator position.

59. On September 28, 2020, Seklecki advised Doyle that she would consider the position.

### The Termination of Seklecki's Employment

60. On October 1, 2020, Director of Operations and Implementation Lindsay, and Dana Pietras, Human Resources Business Partner, advised Seklecki that her employment was terminated effective immediately.

61. By hiring Kerry McMonagle and Shana Baker for the Office Coordinator positions, and terminating Seklecki's employment, PE has discriminated against Seklecki based on her age.

62. The decision to terminate Seklecki's employment and not hire Seklecki as Operations Coordinator was based upon a desire to terminate an employee who was perceived as disabled, who had expressed concerns about not following COVID-19 safety protocols in the workplace, and who had advised Defendant that she suffered from asthma and was at increased risk for COVID-19.

63. PE has not proffered any legitimate reason for the failure to hire Seklecki and the termination of Seklecki's employment.

64. Seklecki has incurred substantial damages as a consequence of PE's conduct including lost wages and emotional distress.

65. PE's actions were willful and outrageous in that its motives and conduct as set forth above were malicious, wanton, reckless and oppressive.

## COUNT I

**VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT**

**29 U. S. C. §621 et. seq.**

66. Paragraphs 1 to 65 are incorporated herein by reference, as if set forth in full.

67. Seklecki is over 40 years of age.

68. PE is subject to the ADEA.

69. Seklecki was/is qualified for the Operations Coordinator position.

70. PE hired Kerry McMonagle and Shana Baker as Operations Coordinators.

71. Kerry McMonagle and Shana Baker are substantially younger than Seklecki.

72. PE hired employees who are substantially younger than Seklecki for the Operations Coordinator positions.

73. Seklecki suffered an adverse employment decision in the form of the termination of her employment.

74. Defendant PE's actions towards Seklecki and the decision to terminate Seklecki's employment were arbitrary and capricious, and based upon a discriminatory animus towards older employees in the workplace.

75. Defendant PE's conduct is per se unlawful and constitutes unlawful age discrimination in violation of the ADEA.

76. As a direct result of the aforesaid conduct, Seklecki has sustained permanent and irreparable harm.

WHEREFORE, Plaintiff Gina Seklecki requests that this Court enter judgment in her favor and against Defendant Physicians Endoscopy, and that this Court award Plaintiff all damages available under the Age Discrimination in Employment Act, including monetary damages exceeding $150,000.00, in the form of all compensation and monetary losses, which Plaintiff has been denied, including back pay, front pay and prejudgment interest; reinstatement; ADEA liquidated damages; reasonable attorneys' fees; expert witness fees; costs; and any other relief which the court deems appropriate.

## COUNT II

**VIOLATION OF AMERICANS WITH DISABILITIES ACT, AS AMENDED BY THE ADA AMENDMENTS ACT OF 2008**

**42 U. S. C. §12101, et. seq**.

### DISABILITY DISCRIMINATION

77. Paragraphs 1 to 76 are incorporated herein as if set forth in full.

78. PE believed that Seklecki had a physical impairment that substantially limited major life activities only as a result of the attitudes of others toward such impairment.

79. When PE terminated Seklecki's employment, PE regarded or treated Seklecki as disabled.

80. Seklecki suffered an adverse employment action in the form of the failure to hire for open positions based on the perception that she was disabled.

81. In terminating Seklecki's employment, PE treated Seklecki differently than other similarly situated individuals who are or were not disabled, whom PE did not regard or perceive as disabled.

82. PE retaliated against Seklecki for following COVID-19 protocols at the workplace which were necessary due to her disability.

WHEREFORE, Plaintiff Gina Seklecki requests that this Court enter judgment in her favor and against Defendant Physicians Endoscopy and that this Court award Plaintiff all damages available under the Americans with Disabilities Act, as amended, including monetary damages exceeding $150,000.00, compensatory damages, punitive damages, reasonable attorneys' fees, reasonable expert witness fees, interest, costs, and any other relief which the Court deems appropriate.

/S/ Andrew S. Abramson, Ese.
_____

Andrew S. Abramson, Esq.
Abramson Employment Law, LLC
790 Penllyn Blue Bell Pike
Suite 205
Blue Bell, PA 19422
telephone: 267-470-4742
email: asa@aemploylaw.com

Attorney for Plaintiff Gina Seklecki

Dated: February 16, 2021